UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACQUES L. RIVETTE,<br><br>                     Petitioner,<br><br>      vs.<br><br>JOSEPH P. SMITH, Superintendent,<br><br>                     Respondent. | No. 9:06-cv-01039-JKS<br><br>MEMORANDUM DECISION |

      Petitioner Jacques L. Rivette, a state prisoner appearing through counsel, has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner is currently in the custody of the New York State Department of Corrections incarcerated at the Shawangunk Correctional Facility.  Following a jury trial in Rensselaer County Court, Petitioner was convicted of two counts of Murder in the Second Degree (N.Y. Pen. Law § 125.25(1), (3)) (intentional and felony murder) and one count of Robbery in the First Degree (N.Y. Pen. Law § 160.15(2)).  Petitioner is currently serving concurrent indeterminate prison terms of 25 years to life on each of the murder charges and an indeterminate term of 12½ to 25 years on the robbery count, to be served concurrently with the felony murder count and consecutively to the intentional murder count.

      Petitioner timely appealed his conviction to the Appellate Division, Third Department, which affirmed his conviction on July 7, 2005, and the New York Court of Appeals denied leave to appeal on August 31, 2005.  *People v. Rivette*, 798 N.Y.S.2d 188 (N.Y.A.D.), *lv. denied*, 836 N.E.2d 38 (Table) (N.Y. 2005).  While his direct appeal from the conviction was pending, Petitioner filed three motions in the Rensselaer County Court under New York Criminal Practice Law  ("CPL") § 440.10, which motions were denied on May 15, 2000, January 31, 2001, and May 5, 2004, respectively.  The Appellate Division granted leave to appeal, consolidated the appeals from the three orders denying his CPL § 440.10 motions with the direct appeal from the conviction, and affirmed the conviction and denial of the CPL § 440.10 motions.  *Id*.  On August 17, 2006, Petitioner filed a fourth CPL § 440.10 motion in the Rensselaer County Court, which

motion was still pending when he filed the petition in this Court.  On August 18, 2006, Petitioner filed a petition for a writ of error *coram nobis* in the Appellate Division, which was also pending at the time he filed his petition for relief in this Court.  On August 28, 2006, Petitioner timely filed his application for relief in this Court.  The Appellate Division denied the error *coram nobis* petition September 27, 2006, and leave to appeal was denied by the New York Court of Appeals on November 17, 2006.  *People v. Rivette*, 860 N.E.2d 75 (N.Y. 2006).  The Rensselaer County Court denied Petitioner's fourth CPL § 440.10 motion on October 19, 2006, and leave to appeal was denied by the Appellate Division on December 15, 2006.

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or  "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this standard, this Court reviews the last reasoned decision by the state court, *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000), which in this case was that of the Appellate Division, Third Department, affirming his conviction and denial of Petitioner's first three CPL § 440.10 motions, and the Rensselaer County Court in denying his fourth CPL § 440.10 motions.[1]  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

If a federal claim has not been adjudicated on the merits, AEDPA deference is not required.  *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003).  In that situation, conclusions of law and mixed questions of fact and conclusions of law are reviewed *de novo*.  *DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir. 2005).  Where there is no reasoned decision of the state

---

[1] The issue raised in Petitioner's error *coram nobis* petition to the Appellate Division, ineffective assistance of appellate counsel, has not been presented in his petition to this Court.

MEMORANDUM DECISION
*Rivette v. Smith*, 9:06-cv-01039-JKS                               2

court addressing the ground or grounds raised by the Petitioner on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it. *See Spears v. Greiner*, 459 F.3d 200, 203-04 (2d Cir. 2006) (applying the *Strickland* standards).

To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief. This Court may only address violations of federal law. 28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). It is also presumed that the state court knew and correctly applied state law. *See Walton v. Arizona,* 497 U.S. 639, 653 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Fry v. Piler*, 551 U.S. ___, ___, 127 S.Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

In his petition to this Court, Petitioner has raised 14 grounds: (1) the evidence before the grand jury was tainted (witnesses allegedly testified that petitioner possessed stolen cigarettes, an APB bulletin purportedly indicated otherwise, the witnesses were drug addicts who could not corroborate each other, and an unsigned statement was admitted in the grand jury); (2) the verdict was against the weight of the credible evidence, and the People failed to prove petitioner's guilt beyond a reasonable doubt; (3) petitioner's trial was marred by due process violations; (4) the prosecutor committed *Rosario* violations (the prosecution failed to preserve fingernail scraping evidence and to timely produce witness statements or to produce them at all, and the Troy Police Department table of contents for the case file was never disclosed); (5) prosecutorial misconduct for presenting to the grand jury allegedly false evidence that petitioner

possessed stolen cigarettes; (6) the prosecutor violated *Rosario* dictates by not disclosing Clemor McKnight's statement and plea colloquy; (7) the prosecutor violated *Brady* dictates by failing to safeguard the murder weapon and failing to preserve the fingernail scrapings; (8) ineffective assistance of trial counsel (failure to pursue a "wrong man" defense, failure to fully exploit the loss of the murder weapon, failure to pursue the "phantom cigarette testimony" issue, and failure to demand DNA testing of the fingernail scrapings); (9) the special prosecutor had a conflict of interest; (10) the consecutive sentences for first-degree robbery and intentional murder were illegal; (11) the court erred in denying the first CPL § 440.10 motion; (12) the court erred in denying the second CPL § 440.10 motion; (13) the court erred in denying the third CPL. § 440.10 motion; and (14) the court erred in denying the fourth CPL § 440.10 motion.  Respondent concedes that, except for the ninth ground in part, Petitioner has exhausted his state court remedies.

    Ground 1:  (Evidence Before the Grand Jury).

    Petitioner contends that the evidence presented to the grand jury was tainted by reference to stolen cigarettes, which Petitioner claims were not in fact stolen.  In rejecting Petitioner's arguments, the Appellate Division held (798 N.Y.S.2d at 191 (citations omitted)):

> Moreover, inasmuch as his convictions were based upon legally sufficient trial evidence, defendant's challenge to the denial of his motions to dismiss the indictment for insufficiency of the evidence presented to the grand jury is foreclosed . . . .  To the extent that defendant asserts in addition that the grand jury process was tainted because the People introduced testimony from two witnesses suggesting that cigarettes may have been stolen in the course of the robbery when an all points police bulletin indicated that no cigarettes were stolen, we conclude that any alleged error in this regard did not impair the integrity of the proceeding or cause prejudice to defendant . . . .

    Analysis starts with the basic proposition that the Fifth Amendment right to a grand jury indictment has not been incorporated against the states through the Fourteenth Amendment. *Brazenburg v. Hayes*, 408 U.S. 665, 688 n. 25 (1972), citing *Hurtado v. California*, 110 U.S. 516, 534–35 (1884).  Consequently, an infirmity in state grand jury procedures in criminal prosecutions does not, itself, raise any Constitutional issue.  Any infirmity in state criminal grand jury proceedings, standing alone without some other Constitutional infirmity, is a product of

state law, which, as noted above, is beyond the purview of this Court in a federal habeas proceeding. Petitioner is not entitled to relief on his first ground.

Ground 2: (Weight and Sufficiency of the Evidence).

Petitioner contends that the verdict was against the weight of the credible evidence and, therefore, the People failed to prove each element of the crimes charged beyond a reasonable doubt. In rejecting this argument, the Appellate Division held (798 N.Y.S.2d at 190–91 (citations omitted)):

> Initially, we reject defendant's assertions that the verdict was against the weight of the evidence and that there was insufficient proof to support his convictions. The crime of murder in the second degree under Penal Law § 125.25(1) requires a showing that the defendant intended to cause the death of another person and caused the death of that person or a third person. Under Penal Law § 125.25(3), a person is guilty of murder when, as relevant here, he or she "commits or attempts to commit robbery [or] burglary . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, [the defendant] or another participant . . . causes the death of a person other than one of the participants." In order to prove the crime of robbery in the first degree, the People must demonstrate that the defendant forcibly stole property while he or she was armed with a deadly weapon during the commission of the crime or during the immediate flight therefrom (*see* Penal Law § 160.15[2] ).
>
> Here, the People produced testimony from various employees of Stewart's indicating that approximately $5,000 and possibly some cigarettes were missing from the store following the murder. Friends and acquaintances of defendant testified that on the morning of the murder, defendant sought to purchase drugs and was refused because he lacked money and was in debt to the sellers. Later that day, defendant and Thorsen had both money and guns and defendant subsequently bragged to several friends about robbing the Stewart's shop, taking the victim into the back room to open the safe, making him lie down and shooting him in the back of the head. While he was in jail, defendant repeated these admissions to another inmate, claiming that he had killed the victim, then took the money from the safe, as well as cigarettes and lighters, and ran out of the store. Further, the People also introduced evidence that a .22 caliber bullet was removed from the victim's skull and testimony regarding a .22 caliber revolver that was once owned by Thorsen but inadvertently destroyed by police.
>
> Viewing this evidence in the light most favorable to the People, as we must, we conclude that there is a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial." Considering the evidence in a neutral light and giving deference to the jury's opportunity to view the witnesses, hear

> their testimony and observe their demeanor, we conclude that defendant's convictions were not against the weight of the evidence.

The constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original). This court must, therefore, determine whether the decision of the Appellate Division on the merits unreasonably applied *Jackson*.

Petitioner's argument focuses on what evidence was not introduced. Petitioner misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac, supra*. Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as prescribed by state law. That such evidence exists is clearly established by the record in this case. Petitioner bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous; a burden Petitioner has failed to carry. Here, the Appellate Division, a state court, found that there was sufficient evidence to support conviction of the crimes under state law. Review of that decision is beyond the purview of this Court in a federal habeas proceeding.

The Court cannot say that in this case that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams*; *i.e*., the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Petitioner is not entitled to relief on his second ground.

Ground 3: (Due Process Violations).

Petitioner presents a smorgasbord of "errors" he alleged occurred in the investigation, indictment and trial, most of which appear to be raised in other grounds, although some are not. Except to recite this litany of alleged errors, of which those that are raised as separate grounds and are discussed elsewhere in this decision are meritless, and his disagreement with the determination of the Appellate Division as to the weight and sufficiency of the evidence, Petitioner's argument, which is terse, undeveloped and unsupported by citation to relevant controlling authority, is neither cogent nor persuasive. Petitioner is not entitled to relief on his third ground.

Ground 4: (*Rosario* Violations – Preservation of Evidence/Production of Witness Statements).

Petitioner contends that in failing to preserve evidence (the alleged murder weapon that was destroyed) and complete normal testing (on the fingernail scrapings), turn over statements, case file inventory, and physical evidence constituted a *Rosario* violation.[2] Respondent contends that *Rosario* claims are state law claims, not founded on either the federal constitution or federal laws, are not cognizable in a federal habeas proceeding. The Court agrees. *See Young v. McGinnis*, 411 F.Supp.2d 278, 329 (E.D.N.Y. 2006); *Jackson v. Lacy*, 74 F.Supp.2d 173, 180 (N.D.N.Y. 1999); *Stephens v. Costello*, 55 F.Supp.2d 163, 167 (W.D.N.Y. 1999); *Green v. Artuz*, 990 F.Supp. 267, 274–75 (S.D.N.Y. 1998); *United States ex rel. Butler v. Schubin*, 376 F.Supp. 1241, 1247, (S.D.N.Y. 1974), *aff'd*, 508 F.2d 837 (Table) (2d Cir. 1975).[3] To the extent that the claims also constitute *Brady* violations, they are discussed in connection with Petitioner's seventh ground. Petitioner is not entitled to relief on his fourth ground.

---

[2] *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961), the New York discovery rule that requires the prosecution to turn over for examination by the defense the statements of prosecution witnesses.

[3] The Court notes that the Second Circuit has addressed the merits of compliance with *Rosario* solely in the context of a claim of ineffective counsel for failure to raise a state law claim. *See, e.g., Flories v. Demskie*, 215 F.3d 293, 300–305 (2d Cir. 2000); *Mayo v. Henderson*, 13 F.3d 528, 533–536 (2d Cir. 1994).

Ground 5:  (Prosecutorial Misconduct).

Petitioner's prosecutorial misconduct claim is based upon two elements: (1) that the prosecution presented false testimony that cigarettes had been stolen and (2) the failure to disclose the plea agreement with a key witness.  "The Due Process Clause of the Fourteenth amendment is violated when prosecutorial misconduct 'so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process.' "  *Jenkins v. Artuz*, 294 F.3d 284 (2d Cir. 2002) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).  The conduct of the prosecutor drawn into question in the case at bar, even if improper, does not rise to the egregious conduct that is required to sustain a finding of prosecutorial misconduct.

If in fact the prosecution had knowingly presented false testimony, Petitioner possibly would be entitled to relief.  *See Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  However, Petitioner's assumption that the evidence he contends was not disclosed establishes that no cigarettes were stolen is nothing more than speculation.  Moreover, the evidence introduced and accepted by the jury was that, in addition to the cigarettes, a large sum of money was also taken as part of the robbery–murder of which Petitioner was convicted.  Thus, even if the cigarettes were not stolen, it would not have affected the jury's decision; he would still have been convicted of the robbery and felony-murder charges based upon the evidence that cash was also taken, evidence that Petitioner conveniently overlooks.

As to the failure to disclose the plea bargain, as discussed in connection with Petitioner's seventh ground, the alleged *Brady* violation, counsel apparently had knowledge of the plea bargain, therefore its disclosure was not necessary.

Petitioner is not entitled to relief on his fifth ground.

Ground 6:  (*Rosario* Violations – Non-disclosure of Witness Statement & Plea Colloquy).

Petitioner is not entitled to relief on his sixth ground for the reasons stated above in denying relief on his fourth ground.

Ground 7:  (*Brady* Violations).

Petitioner argues that the failure to safeguard and turn over the alleged murder weapon, *i.e.*, its destruction whether intentional or negligent, and failure to safeguard and test certain

scrapings taken from the fingernails of the victim constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1962). The Appellate Division, in rejecting Petitioner's arguments, held (798 N.Y.S. 2d at 191–92 (citations omitted)):

> We are further unpersuaded by defendant's argument that the failure of the People to produce the alleged murder weapon and certain fingernail scrapings, as well as the People's failure to disclose a plea deal with one of their material witnesses, constituted fatal *Brady* errors. "A defendant has the right, guaranteed by the Due Process Clauses of the Federal and State Constitutions, to discover *favorable* evidence in the People's possession which is *material* to guilt or punishment" With respect to the fingernail scrapings, there is no suggestion in the record that any associated evidence was exculpatory; instead, the record indicates only that such scrapings were taken and there is no evidence that tests were done. Regarding the witness's plea deal, defense counsel was evidently aware of the deal and its exculpatory nature. Thus, the People had no obligation to provide defendant with such evidence . . ., and his CPL 440.10 motion directed at the plea deal was properly denied. With respect to the gun used to murder the victim, evidence was produced at trial that while the gun was inadvertently destroyed by the police, the bullet recovered from the victim had been so badly damaged that it was impossible to obtain a conclusive ballistics match to any gun. Inasmuch as the gun had limited evidentiary value, defendant was allowed to expose these limitations and County Court gave an adverse inference instruction to the jury, there is, in our view, no reasonable possibility, given the overwhelming evidence of defendant's guilt, that the failure to produce the gun contributed to the jury's verdict . . . .[FN2]
>
> > FN2. To the extent that defendant also argues that the all points police bulletin should have been provided to him by the People, we similarly conclude that the evidence regarding the cigarettes—even assuming it can be considered favorable—was minimal in light of the other evidence proving defendant's guilt and its presentation would not have affected the outcome of this case.

*Brady* and its progeny require the Government to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). A *Brady* violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed. *Strickler,* 527 U.S. at 281. That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley,* 473 U.S. 667, 678 (1985).

The failure to preserve "potentially useful evidence" does not violate due process "*unless a criminal defendant can show bad faith on the part of the police.*" *Youngblood v. Arizona,* 488 U.S. 51, 58 (1988) (emphasis added); *see also Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004) (per curiam) (applying *Youngblood*). Here, as the Appellate Division found, the destruction was inadvertent and there is no showing of bad faith on the part of the police in destroying the gun or the fingernail scrapings. As the Appellate Division found, although they were perhaps potentially useful, neither the gun nor the fingernail scrapings were exculpatory nor, for that matter, would they have been particularly useful to the defense.

As to the plea bargain issue, the Appellate Division found that trial counsel had knowledge of it, therefore the *Brady* error, if one there was, was harmless. Moreover, "where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." *United States v. Avellino,* 136 F.3d 249, 257 (2d Cir. 1998).

The Court cannot say that in this case that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Petitioner is not entitled to relief on his seventh ground.

Ground 8: (Ineffective Assistance of Trial Counsel).

Petitioner alleges that trial counsel was ineffective in that trial counsel failed to: (1) pursue and exploit evidence that could have provided reasonable doubt and/or outrightly exonerated defendant, the "wrong man" defense; (2) fully exploit the prosecution's failure to produce the alleged murder weapon; (3) pursue the phantom cigarette testimony; and (4) demand DNA testing of the scrapings taken from the fingernails of the victim.

In his Petition and Amended Petition Plaintiff indicates he raised the issue of ineffective counsel before the Appellate Division on direct appeal, and that he did not raise this ground in any post-conviction proceedings.  However, review of the record indicates that Petitioner raised the "wrong man," failure to produce the murder weapon, and  the "phantom cigarette" issues in his first CPL § 440.10 motion.  In Petitioner's opening brief filed with the Appellate Division, in his "Questions Presented" number 5, Petitioner refers to the failure to demand DNA testing of the fingernail scrapings but only mentions the issue in passing in his argument.  The decision of the Appellate Division on the consolidated appeals does not separately address the issue of ineffective counsel; however, the Rensselaer County Court denied the CPL § 440.10 motion in a written decision, which is the last reasoned decision rendered by a state court.

To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  *Id*.  Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).  *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions.  Indeed, the Supreme Court admonished in *Strickland*, 466 U.S. at 689 (internal citations and quotation marks omitted):

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

In denying his first CPL § 440.10 motion, the Rensselaer County Court held:

> Initially, he claims that Mr. Grimmick did not pursue what he claims was a viable defense, a "wrong man" defense, that is, that he, defendant, was the wrong man, and that the evidence clearly points to another man.
>
> Defendant claims that that other man was Andrew Abrams. Although defendant presents the court with exhibits allegedly connecting Abrams to the murder of Michael Atkinson, the victim in this case, the only direct evidence was a statement taken by a police officer from Wendy Kunker indicating that she recognized some dollar bills that were in the store when the victim was murdered which were allegedly traced back to Abrams.
>
> Defendant's Exhibit J, consisting of what defendant says are his attorney's trial notes but what seem to the court to be notes taken prior to trial, indicate that Mr. Grimmick was aware of the information from Kunker.
>
> Significantly, what defendant has not presented to the court to support his 440 motion are affidavits either from Kunker as to what she might have said at trial or from Mr. Grimmick as to why he never called Kunker as a witness. Nor has he given the court any explanation as to why he does not have these affidavits. Moreover, defendant has not shown, as he must, that there was no strategic or other legitimate explanation for not calling Kunker or directing the defense more at Abrams. People v Rivera, 71 NY2d 705, 708-9. Also, as the People point out, Mr. Grimmick's cross-examination specifically made "references to others who may have been involved in the murder, and so specifically noted that Mr. Rivette's name did not come up." (Memo. Of Law, p. 6).
>
> Defendant, in his Reply brief, cites a number of cases in support of his position, but all are clearly distinguishable to the case at bar. In Chambers v Armontrout, 907 F.2d 825 (8th Cir. 1990), defendant's attorney failed to call an eyewitness to the killing. In Sanders v Ratelle, 21 F.3d 1446 (9th Cir. 1994), defendant's attorney failed to call defendant's brother as a witness, even though the brother confessed to the murder on several occasions prior to the trial and wanted to testify on behalf of the defendant. And, lastly, in Jones v Wood, 114 F.3d 1002 (9th Cir. 1997) defendant's attorney failed to investigate a person obviously the possible perpetrator of the murder of defendant's wife in a case that the People conceded was a weak, circumstantial case with no motive for defendant to have committed the crime.
>
> In the case at bar, multiple witnesses stated that defendant told them he killed the victim and the clear motive was to obtain money for the purchase of

>   drugs. The case against defendant presented the jury with overwhelming evidence of his guilt.
>
>   Defendant contends that his lawyer was also ineffective cause he presented no witnesses on his behalf. Again defendant has not shown that there was no strategies or other legitimate reason for not calling witnesses on his behalf. People v Rivera, supra. Moreover, defendant failed to create any issue of fact because he "has submitted no evidence as to how the witnesses who were not called on his behalf would have benefitted him if they were." People v Harris, 131 AD2d 142, 144 (3d Dept. 1987). In relation to witnesses other than Kunker, again the court points out that defendant has presented the court with no affidavits from any of those witnesses, or from Mr. Grimmick as to why such witnesses were not called, nor any explanation for not presenting the court with them.
>
>   The People, quoting from People v Ouinn, 147 AD2d 736, 737 (3d Dept. 1989), claim that the record shows that Mr. Grimmick "made numerous appropriate and significant pretrial motions, vigorously participated in examination and cross-examination of witnesses, registered proper objections, made motions . . . , made requests to charge and gave a meaningful summation." The People conclude, "Simply stated, the record shows that defendant received meaningful representation, as presently required." The court agrees.
>
>   Based on all of the above, the defendant's motion, in relation to the above contentions, is denied without a hearing pursuant to CPL § 440.30(4)(b)(d).
>
>   Defendant also claims his attorney was ineffective because he allowed the People to improperly introduce irrelevant evidence and manipulate witnesses. Moreover, he contends that the judgment should be vacated pursuant to CPL § 440.10(1) (c) because the People intentionally placed in evidence false and misleading testimony and physical evidence. All allegations related to the above contentions are on the record and, therefore, the court must deny them without a hearing pursuant to CPL § 440.13(2)(b).

Neither the Rensselaer County Court nor the Appellate Division discussed the questions of the failure to: (1) fully exploit the prosecution's failure to produce the alleged murder weapon; (2) pursue the phantom cigarette testimony; or (3) demand DNA testing of the fingernail scrapings taken from the victim. Thus, this Court must review those questions *de novo* based upon the record.

The failure to "fully exploit" the failure to produce the gun is belied by the record. As Respondent points out, trial counsel established on cross-examination of Dominick Denio that the fatal bullet could have been fired from one of 17 models, and thus any one of millions of handguns and in questioning Captain Valenti, that the police had not made optimal efforts to

preserve the gun (R: 2212-19).  Because the gun was lost, trial counsel had the court give an adverse inference instruction.  What more trial counsel could have done to "exploit" this is unexplained.  On this issue, the performance of counsel was not deficient.  In addition, as the Appellate Division found in ruling on the Brady violation issue:

> With respect to the gun used to murder the victim, evidence was produced at trial that while the gun was inadvertently destroyed by the police, the bullet recovered from the victim had been so badly damaged that it was impossible to obtain a conclusive ballistics match to any gun.  Inasmuch as the gun had limited evidentiary value, defendant was allowed to expose these limitations and County Court gave an adverse inference instruction to the jury, there is, in our view, no reasonable possibility, given the overwhelming evidence of defendant's guilt, that the failure to produce the gun contributed to the jury's verdict.

Thus, not only was counsel's performance not deficient but, even if it was, Petitioner suffered no prejudice.

On the "phantom cigarettes" issue, Petitioner's argument is speculative but even more importantly, assuming that his speculation as to the effect, *i.e.*, would have established that no cigarettes were in fact stolen, could not possibly have affected the outcome.  This would only have been relevant to the robbery and felony-murder charges.  However, the evidence introduced and accepted by the jury was that in addition to the cigarettes, a large sum of money was also taken as part of the robbery–murder of which Petitioner was convicted.

On the question of the failure to demand DNA testing of the fingernail scrapings, Petitioner argues, without explanation, "could have excluded defendant."  Petitioner's argument on this point is so terse and bereft of any factual basis that might possibly support his conclusory characterization of the potential effect of this evidence that the Court must guess as to how this evidence might have benefitted Petitioner.  This, the Court is neither required nor inclined to do.

This Court cannot say that the decision of the Rensselaer County Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively

unreasonable.  Petitioner has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that defendant's defense was prejudiced, as required by *Strickland-Hill*.  In particular, Petitioner has failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.   Petitioner is not entitled to relief on his eighth ground.

> Ground 9:  (Special Prosecutor's Conflict of Interest).

Petitioner contends that the trial court erred in appointing as special prosecutor in the case an attorney who at the time of his appointment was a member of the same law firm as an attorney whom Petitioner had contacted with respect to potentially representing Petitioner on a *pro bono* basis.  The Appellate Division, in rejecting Petitioner's arguments, held (708 N.Y.S. 2d at 192 (citations omitted)):

> Also lacking in merit are defendant's contentions that County Court exceeded its authority in appointing a special district attorney and that there was a conflict of interest between the special district attorney and defendant.  County Court's appointment of a special district attorney based on the  District Attorney's demonstrated conflict of interest was well within its authority under County Law § 701 . . . .  Nor do we find any error in County Court's rejection of defendant's claim that a conflict of interest existed between the special district attorney and defendant because defendant contacted and discussed his case with a member of the special district attorney's firm.  At a hearing on the matter, the special district attorney indicated that he had no knowledge of the contact, the attorney who spoke with defendant testified that he did not open a file for the case or take any notes of the conversation, and defendant admitted both that he revealed no information or details about the case other than what had been printed in the newspaper and that the attorney gave him no legal advice about his case.  Hence, it cannot be said that there was any actual prejudice arising from the alleged conflict or a risk of an abuse of confidence such that disqualification would be justified .

Appointment of an interested prosecutor is a fundamental and pervasive error that requires reversal without regard for the facts and circumstances.  *Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 809-10 (1987).  However, in this case the state court found that there was no conflict, a factual finding that may be overturned only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell, supra*.  A hurdle Petitioner has failed to clear.  Moreover, given the lack of holdings from the United States Supreme Court regarding the effect of a possible or potential appearance of a conflict of interest on the part of a prosecutor as

opposed to an actual conflict of interest, it cannot be said that the Appellate Division unreasonably applied established federal law. *Carey v. Musladin*, 549 U.S. ___, ___, 127 S.Ct. 649, 654 (2006). Petitioner is not entitled to relief on his ninth ground.[4]

Ground 10. (Imposition of Consecutive Sentences).

Petitioner contends that the sentence for the first degree robbery conviction should have been imposed to run concurrently with the murder convictions, not consecutively. He presented this issue to the Appellate Division on his direct appeal. In rejecting Petitioner's argument, the Appellate Division held (798 N.Y.S.2d at 192–93 (citations omitted)):

> Finally, we conclude that there is no merit to defendant's argument that County Court erred in imposing consecutive sentences on his intentional murder and robbery convictions. When "separate or successive acts have occurred in the course of a single criminal transaction, and neither is, by definition, a material element of the other, the trial court retains its discretionary consecutive sentencing authority . . . ." The elements of intentional murder in the second degree and robbery in the first degree as charged here do not overlap . . ., and defendant's robbery at the Stewart's shop and subsequent murder of the victim were two separate acts. Indeed, defendant evidently admitted to murdering the victim as a gratuitous afterthought, primarily because he became angry when the victim begged for his life. As such, County Court did not abuse its discretion in imposing consecutive terms of imprisonment. . . .

Although Petitioner may have received a severe sentence and the Eighth Amendment prohibits sentences that are grossly disproportionate to the crime, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Solem v. Helm,* 463 U.S. 277, 289-90 (1983) (internal alterations and emphasis omitted). Balanced against the proportionality principle is the corollary principle that the determination of prison sentences is a legislative prerogative not within the province of the courts. *Rummel v. Estelle*, 445 U.S. 263, 275–76 (1980).

Initially the Court looks to *Rummel* and *Solem* for guidance. In *Rummel*, the Supreme Court rejected the argument that a life sentence with possibility of parole upon conviction of obtaining $120.75 by false pretenses violated the Eighth Amendment where the defendant's

---

[4] To the extent that Respondent claims that Petitioner has not properly exhausted his state court remedies with respect to this ground, the Court need not reach that issue as it may deny an unexhausted ground on the merits. 28 U.S.C. § 2254(b)(2).

criminal history consisted solely of the fraudulent use of a credit card to obtain $80 worth of goods and passing a forged check in the amount of $28.36.  In *Solem* the Supreme Court found a sentence of life without possibility of parole upon conviction of uttering a no account check for $100 based on a criminal history of seven nonviolent felonies violated the Eighth Amendment.  More recently, in *Ewing v. California*, 538 U.S. 11 (2003), the Supreme Court upheld California's "three-strikes" law and affirmed a sentence of 25 years to life for felony grand theft.[5]  The Court cannot say that in this case the sentence imposed was grossly disproportional and, therefore, that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Petitioner is not entitled to relief on his tenth ground.

        Ground 11.  (Error in Denying First CPL § 440.10 Motion).

        After reiterating what was essentially presented in his second (insufficiency of the evidence) and eighth grounds (ineffective counsel), Petitioner appears to argue that he was erroneously denied a hearing on his first CPL § 440.10 motion as a result of which he "was denied the opportunity of establishing facts that could have resulted in the prosecution of another person as perpetrator."  However, Petitioner has failed to articulate just what might have been accomplished had a hearing been held, specifically what additional evidence might have been introduced.  Other than to make a generalized argument that on the record his due process arguments cannot be deemed harmless, in effect exhibiting nothing more than a disagreement with the decision of the Appellate Division, Petitioner presents no cogent or persuasive argument in support of this ground.  Petitioner is not entitled to relief on his eleventh ground.

---

[5] The plurality in *Ewing* did so by applying the "grossly disproportionate" approach.  The two concurring justices (Scalia and Thomas) specifically rejected the proportionality test as unworkable.  Interestingly, the four dissenters, while believing the three-strikes law violated the Eighth Amendment, embraced the proportionality approach.

<u>Ground 12.  (Error in Denying Second CPL § 440.10 Motion)</u>.

In his second CPL § 440.10 motion Petitioner argued that the indictment was insufficient, nothing more than a reiteration of his first ground.  Petitioner is not entitled to relief on his twelfth ground for the reasons stated in denying relief on the first ground.

<u>Ground 13.  (Error in Denying Third CPL § 440.10 Motion)</u>.

In his third CPL § 440.10 motion Petitioner raised the *Brady* issue as to the disclosure of the terms of a plea bargain made with a key witness, which he also raised in his seventh ground.  Petitioner is not entitled to relief on his thirteenth ground for the reasons stated in denying relief on his seventh ground.

<u>Ground 14.  (Error in Denying Fourth CPL § 440.10 Motion)</u>.

In his fourth CPL § 440.10 motion Petitioner challenged his conviction of the robbery charge on the ground that it was barred by the statute of limitations and that counsel was ineffective for failing to raise the statute of limitations defense.  The Rensselaer County Court denied the motion on the grounds that sufficient facts appeared of record that the issues could have been presented on direct appeal; therefore, denial of the motion was mandated by N.Y. Criminal Procedure Law § 440.10(2).

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims · · ·."  *Sawyer v. Whitley,* 505 U.S. 333, 338, (1992).  New York Criminal Procedure Law § 440.10(2), a default procedural rule established by statute, is an independent and adequate state ground precluding review by this Court.  *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).  Petitioner is not entitled to relief on his fourteenth ground.

Petitioner is not entitled to relief on any of the grounds raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).  To the extent the issues raised in the petition were addressed by the Appellate Division, Third Department, in its decisions on appeal or the Onondaga County Court in its decision on the second CPL § 440.10 motion, no reasonable jurist could find that the decision was "objectively unreasonable."  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court to enter final judgment accordingly.

Dated:  April 23, 2008.

s/ James K. Singleton, Jr.  
JAMES K. SINGLETON, JR.  
United States District Judge